[Crim. No. 2955. In Bank.—September 22, 1927.]

## THE PEOPLE, etc., Respondent, v. GEORGE WATTERS, Appellant.

[1] Criminal Law—Murder—Evidence—Weight of.—In a prosecution for murder, the fact that the ten year old daughter of the defendant, who was the main witness for the prosecution and the only one who testified to the direct act of killing, did not reveal the secret until about four months after the date of its occurrence, and then only after she had witnessed a serious quarrel between her father and her older sister, does not render improbable the truth of her story, where she testified that the defendant directly after his commission of the crime had warned her not to tell of it or he would cut her throat.

[2] Id.—Corpus Delicti — Proof of. — In a prosecution for murder, proof of the *corpus delicti* is not confined to the production of the body of the alleged victim of the crime but may consist in the direct evidence of eye-witnesses of the homicide, or even of circumstantial evidence sufficiently compelling to fix upon the defendant his complicity in the crime of murder.

[3] Id.—Order of Proof—Discretion of Court.—In such a case, objection to the introduction in evidence of admissions of the defendant before the *corpus delicti* has been sufficiently established by other proof, goes only to the order of proof, and in criminal procedure in this state order of proof is a matter within the discretion of the trial court, and its rulings thereon will not be disturbed on appeal except upon clear proof of an abuse of that discretion.

[4] Id.—Alleged Misconduct of District Attorney—Lack of Assignment.—In a prosecution for murder, alleged misconduct of the district attorney in frequently interrupting defendant's counsel while he was engaged in making his argument before the jury and insisting that the latter was misstating the evidence cannot be held to be prejudicial error where there was no assignment of misconduct at the time.

---

2. Definition and general principles of law respecting *corpus delicti*, note, 78 Am. Dec. 252. See, also, 13 Cal. Jur. 676; 7 R. C. L. 776; 13 R. C. L. 737. Sufficiency of proof of *corpus delicti* in homicide, notes, 68 L. R. A. 57, 73–78; 7 L. R. A. (N. S.) 181. See, also, 7 R. C. L. 776.

3. Necessity for proof of *corpus delicti* before admission of confession, note, 6 Am. St. Rep. 251. See 8 Cal. Jur. 234; 7 R. C. L. 777.

4. See 8 Cal. Jur. 258, 509.

[5] ID.—INSTRUCTIONS—LACK OF ERROR.—In this prosecution for murder, it is held that there was no error in the instructions given to the jury.

---

(1) 30 C. J., p. 312, n. 42.   (2) 30 C. J., p. 284, n. 35, p. 285, n. 38, 45, p. 286, n. 48.   (3) 16 C. J., p. 864, n. 80, p. 865, n. 91; 17 C. J., p. 243, n. 58.   (4) 17 C. J., p. 62, n. 94.   (5) 17 C. J., p. 339, n. 64.

APPEAL from a judgment of the Superior Court of Sacramento County and from an order denying a new trial. John F. Pullen, Judge. Affirmed.

The facts are stated in the opinion of the court.

George E. Foote for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

RICHARDS, J.—This is an appeal from a judgment of conviction of the defendant upon the charge of murder and from the order denying the defendant a new trial. The homicide, if committed as charged in the information, occurred on the twenty-seventh day of January, 1926, in the city of Sacramento, where at the time the defendant resided with his wife and their three minor children the eldest of which was a girl, at that time of the age of ten years, and was the main witness for the prosecution and the only witness who testified to the direct act of killing. Immediately after the date of the alleged homicide the defendant, taking his three children, removed to San Diego, where some four months later he was arrested and charged with the murder of his wife, upon information imparted to the arresting officers by his said daughter. He was brought to trial in Sacramento, where his daughter testified to the direct fact of having witnessed him shoot her mother and also to certain other facts having to do with his disposition of her body. The prosecution also produced at the trial a considerable amount of circumstantial evidence strongly pointing to the defendant's commission of the crime. The defendant did not take the witness-stand in his own behalf, but rested his defense upon a statement given by him to the arresting officers shortly after his detention, in which he asserted his inno-

cence of the crime. The jury returned a verdict finding the defendant guilty of murder of the first degree without recommendation. The defendant moved for a new trial upon several of the statutory grounds, which motion was upon the hearing thereon denied.

[1] The appellant's first contention is that the evidence was insufficient to justify the verdict of conviction, and in support thereof he presents certain criticisms of the testimony of the ten year old daughter of the defendant, who was the only direct witness to the homicide, and which he insists would render her evidence unworthy of credence. He insists, for example, that the fact that this child who, according to her testimony, had seen her mother murdered, did not reveal her dreadful secret until about four months after the date of its occurrence, and then only after she had witnessed a serious quarrel between her father and her still older sister, who at the time of the homicide was living in San Diego, renders most improbable the truth of the story which she then told her sister and later repeated upon the witness-stand. The evidence, however, of the child discloses that the defendant, her father, directly after he had committed the crime had warned her not to tell of it or he would cut her throat. This if believed by the jury, would supply an ample excuse for her silence, at least while living daily with her father and up to the time when the terrified child first saw a ray of hope through the rift occasioned by the quarrel between the murderer and her elder sister. The story which the child told of the homicide and of the actions and conduct of the defendant in disposing of his wife's dead body was consistent in its every detail; and coupled, as it was, with the other circumstances educed by the prosecution at the trial and which showed the sudden and entirely unexplained disappearance of the defendant's wife on the very night of the alleged crime; and taken in connection with the defendant's several lying statements regarding the whereabouts of his wife, supply ample evidence justifying the verdict of conviction. The appellant further, and in this same connection, contends that there was not sufficient evidence of the *corpus delicti*. There seems to be an impression on the part of some that the term "*corpus delicti*" means "the body of the deceased," which it is insisted must be found and produced before a convic-

tion of murder can be had. The rightful meaning of this term is "the body, the substance, the essential elements of the crime." (*People* v. *Simonsen,* 107 Cal. 346, 347. [40 Pac. 440] ; 3 Rice on Evidence, 465–467.) While it is true that the production and identification of the body of the deceased person, especially with the marks upon it indicating death by violence or by other unlawful means would furnish a most direct and convincing form of evidence of the *corpus delicti,* it is not by any means an indispensable one, since, were it otherwise, the murderer by destroying or successfully concealing the body of his victim would render difficult if not impossible his conviction of the crime. [2] Hence it is that proof of the *corpus delicti* is not confined to the production of the body of the alleged victim of the crime but may consist in the direct evidence of eye-witnesses of the homicide, or even of circumstantial evidence sufficiently compelling to fix upon the defendant his complicity in the crime of murder. (3 Rice on Evidence, *supra;* Wharton on Homicide, sec. 637.) The rule is well stated by the last author above cited wherein he relates instances of the human body being disposed of by fire, or boiled in potash or dissolved by acids, rendering it impossible that it should ever be produced; and concludes, "It is clear that in such cases the *corpus delicti* may be proved circumstantially or inferentially." If this be true it follows that it may be proved by a direct eye-witness to the homicide, and this the prosecution in this case produced in the quite convincing testimony of the defendant's own child.

[3] The appellant's next contention is that the trial court committed reversible error in relation to the order of proof, in that it permitted the introduction in evidence of certain alleged admissions of the defendant before the *corpus delicti* had been sufficiently established by other proof. This objection goes only, however, to the order of proof, and it has been a long-established rule of criminal procedure in this state that the order of proof is a matter within the discretion of the trial court, and that its rulings thereon will not be disturbed except upon clear proof of an abuse of that discretion. (*People* v. *Jones,* 31 Cal. 567; *People* v. *Daniels,* 105 Cal. 262 [38 Pac. 720] ; *People* v. *Jones,* 123 Cal. 65

[55 Pac. 698]; *People* v. *Rodley,* 131 Cal. 240, 253 [63 Pac. 351]; *People* v. *Donnolly,* 143 Cal. 398 [77 Pac. 177].)

[4] The next contention of the appellant is that the district attorney was guilty of wilful misconduct during the argument of the case and that such misconduct constituted prejudicial error. An examination of the record discloses that these alleged acts of misconduct on the part of the prosecuting officer arose out of the latter's quite frequent interruptions of the defendant's counsel while the latter was engaged in making his argument before the jury, and consisted in the insistence of the former that the latter was misstating the evidence, resulting in a series of heated controversies between counsel as to the state of the evidence, wherein the forensic victory lay now on the one side and again on the other, during which the court had frequent occasion to remind counsel to confine their discussions to the facts of the case. During the entire course of this rather unseemly controversy between counsel, no assignment of misconduct was made, and it is clear that under such a state of the record prejudicial error cannot be predicated upon the conduct of either counsel in the premises. Each must console himself with whatever his victories were in the verbal encounter.

[5] The final contention of the appellant consists in his assertion, unsupported by either argument or authority, that the trial court committed reversible error in the giving of certain specified instructions. We are not directed, however, to the particular respect wherein it is claimed these instructions are erroneous, nor are we advised as to whether, even if so, they have not been corrected or rendered harmless by the other instructions given by the trial court. We do not discover any manifest error in these instructions. The instructions as given appear in each instance, save one, to be based upon a decision of this court or a section of the Penal Code supporting its correctness as a matter of law; and upon an examination of these we are satisfied that no prejudicial error was committed by the court in giving them and each of them to the jury. Upon the entire record herein it sufficiently appears that the defendant was guilty of the foul and brutal and unprovoked murder of his wife and of a most fiendish and apparently successful effort to destroy and

dispose of her body. This being so, the verdict of the jury in this cause meets with the full approval of this court.

The judgment and order are affirmed.

Waste, C. J., Shenk, J., Seawell, J., Curtis, J., Preston, J., and Langdon, J., concurred.